NORMAN, TIMMONS & COMPANY *v.* SMITH *et al.,* and *vice versa.*

1. When a protest is filed to the return of processioners, it is not necessary that the ordinary should make any written report of the transmission of the papers to the clerk of the superior court, but it is only necessary that he perform the physical act of such transmission; and the presumption is that he did his duty in respect thereto.
2. It is not necessary that the verdict should be specified, or transmitted as part of the record, when no question is made as to its form, and its substance appears from the facts recited in the bill of exceptions.
3. Where the brief of evidence shows that there were introduced in evidence upon the trial documents which are properly specified and transmitted to this court as parts of the record, it is unnecessary that they should be embraced in the brief of evidence.
4. Under the facts of this case, it was error to direct a verdict for the defendant.
5. The court committed no error in striking the plea, or in overruling the demurrer of the defendant.

Argued October 14, 1907.—Decided July 20, 1908.

Processioning. Before Judge Mitchell. Colquitt superior court. April 7, 1907.

The plaintiffs, who claimed to own lot number 51, made application to processioners to survey and mark anew the lines around the same. The processioners ran the lines and made their report, to which the defendant filed a protest, contending, for various reasons, that the line marked by the processioners was not the true line between his land and that of the plaintiffs, but that the same was about 260 yards north thereof. Defendant in his protest claimed to own land adjoining lot 51, and south thereof. Upon the conclusion of the evidence introduced by the plaintiffs the court directed a verdict in favor of the defendant; to which ruling the plaintiffs excepted.

The application of the plaintiffs to have the lines run, and the return of the processioners, together with the certificate and plat of the surveyor, were introduced in evidence; and the plat showed the line run by the processioners and surveyor as the true line. It also showed a line north of this line, which the defendant claimed was the true line, he, and another party who also filed a protest, claiming to own the land between the two lines. The surveyor testified, that the line returned by the processioners as the true line ran through lands claimed by the defendant, which

were in cultivation and under fence; that there were marks on the line claimed by the defendant as the true line, which seemed to be new and not over 15 or 20 years old. On the line returned by the processioners as the true line, on the northwest corner, a stob was found, and on this line were found five old original blazes cut out of the timber. Of the six original blazed trees, there was one about 100 yards from the corner. It was marked with 8 blazes, two rows of blazes around it, and was an "original" tree. 100 yards, or so, from the corner was found a stump with a blaze on it; and 300 yards farther was a young pine with a blaze on it. "The timber in the Smith and Perkins fields showed that they had been in cultivation for twenty years or more." The line which the defendant claimed was the true line had been there at least twenty years. One of the processioners testified, as to running the lines marked on the plat, that the processioners determined on the line reported as the true line as the southern boundary line of lot 51, "by the marks we found on it and by the other lines coming in there." He further testified as follows: "The marks were deep in the pines and were axe marks on the trees. The lines of the other lots came in there also. There were no other lines that fit with the Smith and Perkins lines. There were other lines coming in from other lots that fit in with the line marked 'true original line.' . . We found the line as contended for by Smith and Perkins marked by marks which seemed, as compared with the marks on the other lines, to be comparatively young." The line claimed by the defendant was easily found and plainly marked, easily calculated to put a person looking for it on notice that it was there for 20 years. They were searching for the original lines and for one established by seven years' possession. The timber on lot number 51 had been cut for a sawmill and had been turpentined for as long as seven years to the line claimed by the defendant to be the true line.

*Pope & Bennet, G. F. Stalvey,* and *W. A. Covington,* for plaintiffs. *R. J. Bacon Jr., James Humphreys,* and *Pomp Perkins,* for defendant.

HOLDEN, J. (After stating the facts.)

1. The defendant made a motion in this court to dismiss the bill of exceptions, upon several grounds; one of which is that the bill of exceptions failed to specify "the return of the ordinary"

as a portion of the record. The act of December 17, 1901, which directs that the protest be filed with the ordinary, requires the ordinary "to return all the papers" to the clerk of the superior court. There is no law requiring the ordinary to make any return in writing of such papers; and the provision of the act above referred to, requiring the ordinary "to return all papers," simply means the physical transmission of the papers by the ordinary to the clerk of the superior court. It does not appear from the record in this case that the ordinary ever made any return in writing of the papers; but whether he did or not, there is no law requiring him to do so. Another ground of the motion to dismiss the bill of exceptions is that no part of the record is identified in the bill of exceptions, or record, as being the papers returned by the ordinary to the clerk of the superior court. It does not appear that any point was made in the court below that the papers referred to were not the ones returned by the ordinary. The presumption of law is that he did his duty in the premises, and there was no necessity on the part of the plaintiff to prove that he did his duty. The bill of exceptions specifies the return of the processioners, and other papers in the case, as parts of the record. Copies of such parts of the record come to this court under the certificate of the clerk of the court, which sufficiently identifies them as the record specified. This fact, together with the presumption that the ordinary did his duty in transmitting to the clerk of the superior court the proper papers in the case, sufficiently shows them to be genuine.

2. Another ground of the motion to dismiss is that the bill of exceptions fails to specify the verdict of the jury as a part of the record. The bill of exceptions states that the court directed a verdict in favor of the defendant, who contended in his protest that the line should be in a certain place described in his protest. There is no attack made on the form of the verdict, and under the facts of this case there was no necessity to specify it as a part of the record and have a copy thereof sent to this court. *Lenney* v. *Finley,* 118 *Ga.* 427 (45 S. E. 317) ; *McCowan* v. *Brooks,* 113 *Ga.* 532 (39 S. E. 115).

3. Another ground of the motion to dismiss the bill of exceptions is that the certificate and plat of the county surveyor and the return of the processioners, introduced in evidence, are not

properly before this court as evidence, as they were not attached to the bill of exceptions as exhibits thereto, or embraced in the brief of evidence contained therein. The bill of exceptions states that they were introduced in evidence, and specifies them as part of the record to be sent to this court. It was unnecessary to encumber the record by copying them in the brief of evidence when they were to come up as part of the record. *Allen* v. *Young,* 62 *Ga.* 617; *Blow* v. *White,* 41 *Ga.* 293; *Bosworth* v. *Clark,* 62 *Ga.* 286.

4. In the protest filed by the defendant, he states that he is the owner of land adjoining and south of lot number 51, and that the true line between his land and the land of the plaintiffs was not as reported by the processioners, but the true line between the land of the plaintiffs and defendant was about 260 yards north of the line reported by the processioners. The evidence set out in the statement of facts is not all of the evidence introduced by the plaintiffs, but is sufficient to show the reasons why the processioners reported the line appearing on the plat as the true line between the land of the plaintiffs and that of the defendant, and to show that the jury would have been authorized in concluding that this line was not a new line fixed by the processioners, but was one previously located and established. The evidence was such as to make it a question for the jury to decide whether or not the line reported by the processioners as the true line was the true line between the parties, as well as not being a new line. It is true the evidence showed that it ran through lands which had been cultivated and fenced for some years; but this of itself would not defeat the right of the plaintiffs to have the line established as the true line between the parties. The Civil Code, §3248, provides: "Where actual adverse possession has been had, under a claim of right, for more than seven years, such claim shall be respected, and the lines so marked as not to interfere with such possession." But in order for such possession to be respected by the processioners and the lines so marked as not to interfere with it, such possession must be actual at the time the processioning is had, and must "have been under a claim of right" for more than seven years. There is no evidence in the record showing that the defendant was in possession of the land under any claim of right. The record is silent as to why he was in possession. The burden was on the defendant to show that he was in possession under a claim of right;

and if the defendant was relying on the provisions of this section, the burden was on him to show not only actual possession for seven years, but that the actual possession had been under a claim , of right for that length of time. There is evidence that the land in dispute had been under fence and in cultivation for 20 years, but there is no evidence conclusively showing who erected the fence or did the cultivation, or to establish adverse possession for 20 years. The Civil Code, §3247, provides that "acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." There is evidence that the line claimed by the defendant to be the true line had been in existence for more than seven years, but there is no evidence which conclusively shows that the plaintiffs, or any one under whom they claim, ever knew of the existence of this line. There was evidence that timber was cut from land lot number 51 and the trees thereon were turpentined for more than seven years down to this line and not beyond it, but there is no evidence as to who cut or turpentined the timber, or that the plaintiffs, or those under whom they claimed, ever knew of this cutting of timber and turpentining of trees, or of the existence of this line. We think the case was one that should have been submitted to a jury, and not one for the direction of a verdict.

Defendant contends that the plat of the surveyor was not properly made out, in that it did not indicate the existence of any physical marks along the line adopted by the processioners as the true line. We know of no requirement of law making it the duty of the surveyor to do this. The duty of the surveyor, as set forth in Civil Code, §3245, does not require this, nor do we know of any other provision of law requiring it. The plat is sufficient if so · made that the lines can be definitely located. It appears from the plat that the northern and southern boundary lines of lot number 51 run due east and west, and at right angles to them the eastern and western boundary lines run due north and south. All lines appear to be straight lines, and the length of each is stated. Of the original lines of land lot number 51 only the southern boundary line is in dispute, and with either the original northwest or northeast corner of this lot as a starting point, and the data given on the plat, all of the lines indicated thereon can be definitely located.

5. By reason of the fact that the judgment complained of in the main bill of exceptions is reversed and the case remanded for

another trial, it is proper that the assignments of error set forth in the cross-bill of exceptions should be passed upon. In this cross-bill it is alleged that the court committed error in overruling the demurrer of the defendant, one ground of which is that the plat did not show what portions of the land, if any, traversed by the line reported by the processioners to be the correct line, were in actual possession of the plaintiffs, or the defendant, or that the fields traversed by said line, if any, were under fence and actually occupied by plaintiffs or defendant. Another ground of the demurrer is that "said return does not identify the plat as submitted, with natural objects or otherwise, with the land surveyed." The proceedings were not subject to the special, or to the general demurrer.

The other ground of complaint in the cross-bill of exceptions is that the court committed error in striking a plea filed by the defendant, which he denominated a plea in abatement. This plea alleged that the line reported by the commissioners as the correct line was run and marked across the defendant's land which had been in his actual possession for more than 7 years under a claim of right, and had been in his possession and that of those under whom he claimed for more than 20 years. The defense sought to be set up in this plea was set up in the protest filed by the defendant. We think the proper place for such defense to be set up was in the protest. This defense goes to the merits of the case, and must be set up in the protest which is required to be filed with the ordinary within 30 days after the processioners have filed their return. The plea was not one in abatement, and the court committed no error in striking it.

*Judgment, on main bill of exceptions, reversed; on cross-bill, affirmed. All the Justices concur.*