NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CENTER FOR BIOLOGICAL DIVERSITY INC, et al., *Plaintiffs/Appellants*,

*v.*

KATHLEEN M. HOBBS, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0386

FILED 04-24-2026

---

Appeal from the Superior Court in Maricopa County
No. CV2024-016330
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

---

COUNSEL

Hofmeyr Law PLLC, Tucson
By Adriane J. Hofmeyr
*Counsel for Plaintiffs/Appellants*

Coppersmith Brockelman PLC, Phoenix
By Sambo Dul, Austin C. Yost
*Counsel for Defendant/Appellee Kathleen M. Hobbs*

Arizona Department of Water Resources, Phoenix
By Nicole D. Klobas, Emily Petrick, Jennifer Heim
*Counsel for Defendants/Appellees Arizona Department of Water Resources and Thomas Buschatzke*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Andrew J. Becke joined.

---

**C A T T A N I**, Judge:

¶1 The Center for Biological Diversity, the San Pedro Alliance, and Robin Silver (collectively, "Plaintiffs") appeal from a judgment dismissing with prejudice their claims against the Arizona Department of Water Resources, Thomas Buschatzke in his capacity as Director of the Arizona Department of Water Resources (collectively, the "Department"), and Kathleen M. Hobbs in her capacity as Governor of Arizona. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 In 1980, the Arizona Legislature adopted the "Groundwater Code." A.R.S. §§ 45-401 to -704. Finding that the people of Arizona are dependent on groundwater basins (that is, areas "designated so as to enclose a relatively hydrologically distinct body or related bodies of groundwater," A.R.S. § 45-402(13)) for their water supply, the Legislature declared that it was Arizona's policy to conserve, protect, and allocate groundwater resources, as well as to provide a framework for groundwater management and regulation. A.R.S. § 45-401.

¶3 To effectuate that policy, the Legislature established the Department and gave it "general control and supervision of surface water, its appropriation and distribution, and of groundwater to the extent provided by this title." A.R.S. §§ 45-102(A), -103(B). It further required the Governor to appoint a director, who serves at the Governor's pleasure, to be responsible for the direction, operation, and control of the Department. A.R.S. § 45-102(B)–(C).

¶4 The Legislature initially established four geographic "active management areas," A.R.S. § 45-411(A), and later added a fifth, A.R.S. § 45-411.03(A). Groundwater rights and uses in these areas are more strictly prescribed than in areas not subject to active management. *Compare* A.R.S. § 45-451, *with* A.R.S. § 45-453. The Legislature allowed the Department to designate additional areas for active management if it determined (1) "[a]ctive management practices are necessary to preserve the existing

supply of groundwater for future needs"; (2) "[l]and subsidence or fissuring is endangering property or potential groundwater storage capacity"; or (3) "[u]se of groundwater is resulting in actual or threatened water quality degradation." A.R.S. § 45-412(A). The Legislature also directed that "[t]he director shall periodically review" areas not subject to active management to determine whether they meet these criteria. A.R.S. § 45-412(C).

¶5 The Upper San Pedro Basin ("Basin") lies in southeastern Arizona about 50 miles southeast of Tucson. The San Pedro River—the last undammed, free-flowing river in the desert Southwest—flows through the Basin. It is an arid region, and groundwater is the sole source of water for inhabitants of the Basin, which includes Sierra Vista, Benson, Bisbee, Tombstone, Huachuca City, and the Fort Huachuca Military Reservation. Public and private water use over the past century has contributed to the degradation of the San Pedro River ecosystem and the alteration of the river's flow.

¶6 The Basin includes the San Pedro Riparian National Conservation Area ("Conservation Area"), an area designated by Congress in 1988 to "protect the riparian area and the aquatic, wildlife, archeological, paleontological, scientific, cultural, educational, and recreational resources of the public lands surrounding the San Pedro River." 16 U.S.C. § 460xx (1988). Congress reserved water "sufficient to fulfill the purposes" of the Conservation Area, 16 U.S.C. § 460xx-1(d), an amount that was quantified in 2023.

¶7 Plaintiffs are two conservation groups working in the Basin and an individual landowner. They allege that, despite considerable evidence that groundwater in the Basin is declining, it has been more than 20 years since the Department reviewed the Basin to determine whether it meets the criteria for active management. They filed a complaint for special action relief in the superior court alleging that the Department had failed to perform this review of the Basin in violation of A.R.S. § 45-412(C) and that the Governor had violated her constitutional duty by failing to instruct the Director to conduct this review. Plaintiffs sought (1) a writ of mandamus directing the Department to review the Basin to determine whether it meets the statutory criteria for active management, (2) a judgment declaring that the Department's failure to conduct a review of the Basin under A.R.S. § 45-412(C) is unlawful plus an injunction compelling the Department to review the Basin, and (3) a judgment declaring that the Governor's failure to instruct the Department to review the Basin is a violation of her

constitutional duty to "take care that the laws be faithfully executed." *See* Ariz. Const. art. 5, § 4 ("Take-Care Clause").

**¶8**     The Department moved to dismiss, asserting that mandamus relief was not available because the Department had discretion in deciding when to "periodically review" areas under § 45-412(C) and that Plaintiffs lacked standing for declaratory relief, had not presented a justiciable controversy, and had not shown entitlement to injunctive relief. The Governor also moved to dismiss, asserting that Plaintiffs lacked standing and that they failed to state a claim because the Take-Care Clause is non-justiciable and no statute imposed a specific duty requiring the Governor to instruct the Department to review the Basin.[1]

**¶9**     The superior court dismissed the complaint, finding no basis for mandamus relief given the Department's statutory discretion regarding when to review groundwater areas and finding no actual controversy ripe for declaratory relief. The court dismissed the claims against the Governor, reasoning that their viability depended on the claims against the Department.

**¶10**     Plaintiffs timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A).

## DISCUSSION

**¶11**     Plaintiffs challenge the superior court's dismissal of their claims for mandamus, declaratory judgment, and injunctive relief against the Department, arguing that the Department's failure to review the Basin for 20 years is a violation of its duty under A.R.S. § 45-412(C).[2] We review the dismissal, as well as issues of statutory interpretation, de novo. *Blankenbaker v. Marks*, 231 Ariz. 575, 577, ¶ 6 (App. 2013). We assume the truth of all well-pleaded factual allegations. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

---

[1]     Plaintiffs' first amended complaint ("FAC") is the operative complaint. Although the FAC was filed after the motions to dismiss, the Department asked the court to consider its motion as directed to the FAC, and the Governor moved to dismiss the FAC on substantive grounds. *See* Ariz. R. Civ. P. 15(a)(2).

[2]     The superior court also dismissed Plaintiffs' claim against the Governor, but Plaintiffs do not challenge that ruling on appeal, so we do not address it.

## I.  Mandamus.

**¶12**         "Mandamus is an extraordinary remedy issued by a court to compel a public officer to perform an act which the law specifically imposes as a duty."  *Sears v. Hull*, 192 Ariz. 65, 68, ¶ 11 (1998) (citation omitted); *see also* A.R.S. § 12-2021.  Mandamus relief is appropriate only if the public official's statutory duty is purely "ministerial," i.e., the manner of performance is specifically described and nothing is left to the public official's discretion.  *Ponderosa Fire. Dist. v. Coconino County*, 235 Ariz. 597, 601–02, ¶ 19 (App. 2014).  Mandamus cannot be used to compel an official to exercise discretion in a particular way.  *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 465, ¶ 12 (App. 2007).

**¶13**         Section 45-412(C) requires periodic review of areas not subject to active management:

> The director shall periodically review all areas which are not included within an active management area to determine whether such areas meet any of the criteria for active management areas as prescribed in this section.

Focusing on "shall," Plaintiffs argue that this provision imposes a mandatory duty for which the Department has no discretion and that the superior court erred by dismissing the mandamus claim because the Department has failed to fulfill this duty.  But the additional wording of this subsection undermines Plaintiffs' argument.  *See Ponderosa Fire. Dist.*, 235 Ariz. at 602, ¶ 24 (construing a statute by its plain language, "giving effect to every word and phrase, and assigning to each word its plain and common meaning").

**¶14**         The statutorily required action is that the Department "periodically review" areas that are not included within an active management area.  A.R.S. § 45-412(C).  But the Legislature did not specify dates or even intervals for review; nor did it define "periodically" in the Groundwater Code.  *See* A.R.S. § 45-101.  This leaves the term its ordinary and commonly accepted meaning of "recurring at regular intervals"— which requires regularity but does not dictate a required frequency.  *Univ. Physicians, Inc. v. Pima County*, 206 Ariz. 63, 67, ¶ 21 (App. 2003) (citing 11 Oxford English Dictionary 560 (2d ed. 1989)); *see also JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 310, ¶ 9 (App. 2019).  This phrasing thus leaves the Department discretion to determine how frequently to conduct reviews.  *See Strojnik v. State ex rel. Brnovich*, 1 CA-CV 20-0423, 2021 WL 3051887, at *5, ¶¶ 27–28 (App. 2021) (mem. decision) (reasoning that a

statute requiring the attorney general to conduct "periodic" compliance reviews did "not admit of any particular timeframe or deadline," meaning the act was not purely ministerial and therefore not subject to mandamus).

¶15    The Legislature did not specify a frequency for review under § 45-412(C), although it could have done so.  And it did specify dates or intervals for different provisions elsewhere in the Groundwater Code.  *See* A.R.S. § 45-105(B)(14) (requiring a water supply and demand assessment for each groundwater basin "at least once every five years," with at least six assessments issued by December 1 each calendar year); A.R.S. §§ 45-564 to -568 (specifying a date certain for promulgation of management plans for the initial active management areas).  The omission of a fixed time period in § 45-412(C) thus indicates that the Legislature did not intend to prescribe a particular frequency and instead left the matter to the Department's discretion.  *See Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 349, ¶ 15 (2011) (express inclusion of requirements in some statutes indicates that omission in others is intentional).

¶16    Plaintiffs contend that the word "periodically" must be construed in context, suggesting that the Department's responsibility to control and supervise Arizona's groundwater coupled with worsening water conditions in the Basin means that "periodically" necessarily denotes something more frequent than what the Department has done.  But nothing in the statute requires the Department to take into account area conditions *before* it decides whether to conduct a review to determine if conditions in the area meet the criteria for active management,[3] and we may not read such a requirement into the statute.  *See Roberts v. State*, 253 Ariz. 259, 266 ¶ 20 (2022).  Not only would the exercise be circular (relying on existence of § 45-412(A) criteria to determine whether a § 45-412(C) review for § 45-

---

[3]    Relying on *University Physicians*, a case about property tax exemptions, Plaintiffs assert that we should construe the term "periodically" using a "more particularized analysis" based on the facts of this case.  206 Ariz. at 68, ¶ 28.  Although the *University Physicians* court engaged in statutory construction elsewhere in its opinion, *see id.* at 66–68, ¶¶ 12–27, the "more particularized analysis" referred to a factual inquiry on remand about whether certain property fit the (properly construed) exemption, *id.* at 68, ¶ 28.  That is, the "more particularized analysis" was not, as Plaintiffs suggest, a means of statutory interpretation and did not permit consideration of factors not found in the statute to construe a statutory term.

412(A) criteria is needed), it also would invade the discretion the Legislature has vested in the Department.

¶17        Plaintiffs assert that the Groundwater Code gives the Department sole authority to review an area for the active management criteria, so the Department's failure to review the Basin more frequently renders the duty imposed by § 45-412 meaningless and frustrates legislative intent.  But permitting the Department discretion in deciding when to review which of the various groundwater areas around the state is consistent with the comprehensive statewide scheme codified in the Groundwater Code.  *See, e.g.*, A.R.S. § 45-401(B) (designing an overall framework for "comprehensive management and regulation" of groundwater throughout the state).  Moreover, although no other *agency* has authority to designate active management areas, the Groundwater Code provides meaningful alternatives by permitting the Legislature — or even local voters themselves — to create new active management areas. *See* A.R.S. §§ 45-411, -411.03 (initial and subsequent legislatively created active management areas); A.R.S. § 45-415 (providing for creation of a new active management area by local initiative on petition of 10% of voters within the proposed area and subsequent election).

¶18        In sum, § 45-412(C) requires the Department to "periodically" conduct the required review but gives the Department discretion to determine how and when to do so.  The duty thus is not "purely ministerial," so mandamus relief is not appropriate. *Ponderosa Fire. Dist.*, 235 Ariz. at 601, ¶ 19.

¶19        Finally, Plaintiffs contend that even if the Department's duty is discretionary, it has abused that discretion by failing to conduct a review of the Basin for 20 years despite deteriorating groundwater conditions in the area.  The rule that mandamus is not appropriate when a public officer's duty is discretionary is "qualified by the provision that if it clearly appears that the officer has acted arbitrarily and unjustly and in the abuse of discretion, the action may still be brought." *Collins v. Krucker*, 56 Ariz. 6, 13 (1940).  But when there is more than one way to perform a public official's duty, the court will not use mandamus to compel one method over the other. *Id.* at 13–14.

¶20        Section 45-412(C) gives the Department discretion to conduct a review as it deems appropriate, only requiring that it be done periodically.  Plaintiffs have not shown that the Department has clearly abused its discretion.  They do not allege, for example, that the Department is reviewing other areas more frequently or excluding the Basin altogether.

Instead, Plaintiffs assert that water conditions in the Basin prove the decision not to conduct a review is manifestly unreasonable. But area conditions are not a statutory restriction on the Department's discretion as to when to conduct a review (and because the purpose of the review is to determine area conditions, the Department's duty to perform the review logically cannot be dependent on them).

¶21   Plaintiffs' allegations do not adequately establish that the Department abused its discretion, given all of the relevant considerations, by waiting twenty years to review the Basin to determine whether it meets the criteria for active management. *See Sensing v. Harris*, 217 Ariz. 261, 265, ¶ 14 (App. 2007) ("[D]isagreement alone is not a basis for mandamus."). Accordingly, because the Department's duty to periodically review the state's groundwater areas is discretionary, and given Plaintiffs have not established an abuse of that discretion, the superior court did not err by dismissing Plaintiffs' claim for mandamus relief.

## II. Declaratory Judgment and Injunctive Relief.

¶22   Plaintiffs argue that the superior court erred by dismissing their claim for declaratory judgment and injunctive relief, but they rely on the same arguments as their challenge to dismissal of the mandamus claim, which are unavailing as described above. And Plaintiffs do not challenge the superior court's conclusion that this claim failed because they failed to allege an actual controversy ripe for adjudication. Accordingly, we affirm the dismissal of this claim.

## III. Attorney's Fees on Appeal.

¶23   Plaintiffs seek an award of attorney's fees under A.R.S. §§ 12-2030(A), -348(A)(4), 41-1001.01, and the private attorney general doctrine, should they prevail on appeal. The Department also seeks an award of fees. Because Plaintiffs have not prevailed, we deny their request. Because the Department has not shown an entitlement to fees as a sanction under A.R.S. § 12-349 or ARCAP 25, we deny its request.

## CONCLUSION

¶24   We affirm.

